Ann P. White and others v. The Executors of Samuel S. Olden and others.

A testator, after numerous general and specific legacies, gives as follows:— "After all my just debts are paid, and the expense of fulfilling this my last will and testament, I give and bequeath all the remainder of my property, both real and personal, of whatsoever kind and description, to be equally divided among my four cousins, J., R., G. and J. W." *Held*, that the testator designed to charge the lands devised in the residuary clause with the payment of the debts and legacies, not as a primary fund, but in aid of the personal estate.

The bill in this cause was filed on the twenty-fourth of January, eighteen hundred and forty-two, by Ann P. White, George Emlen Hare, Rebecca N. Paxson, Wiliam R. Skillman and Hetty his wife, Garret Hulfish and Abby his wife, Mahala Voorhees, The Rector, Wardens and Vestrymen of Trinity Church, in the borough of Princeton, Eliza Jerome and Hansen Vanest, all of the county of Mercer, in the state of New-Jersey; John F. Willits and Mary P. Willits his wife, and Elizabeth Bates, of the city of Philadelphia, in the state of Pennsylvania; Rachel Elton and Catharine Olden, of Doylestown, in the county of Bucks, and state of Pennsylvania; Benjamin Swain, of the city of Bristol, county of Bucks, and state of Pennsylvania; Hetty Hollingshead, of Wheeling, in the state of Virginia; and I. D. Wolf, of the city and state of New-York, treasurer of the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America—legatees under the will of Samuel S. Olden, deceased, against the executors and the residuary devisees named in the said will.

The bill charges, that Samuel S. Olden, late of the township of Princeton, county of Mercer, and state of New-Jersey, deceased, being in his lifetime seized and possessed of a large real and personal estate, and being of sound and disposing mind and memory, did, on or about the eighth day of February, in the year of our Lord eighteen hundred and forty-one, make and publish his last will and testament in writing, which

was executed and attested in such manner as by law is required for passing real estate, and was in words and figures, or to the purport and effect following:

"I, Samuel S. Olden, of the township of Princeton, county of Mercer, and state of New-Jersey, considering the uncertainty of this mortal life, and being of sound mind and memory, do make and publish this my last will and testament in manner and form following, to wit: Item, I give and bequeath to my dear aunt, Ann P. White, who since she has had the charge of us, has acted the part of a kind and devoted mother, the sum of ten thousand dollars, to be paid to her as soon as practicable after my decease, or with interest from that time. Item, I give and bequeath to my executors herein after named, the sum of eight thousand dollars, in trust to be paid over and transferred by them in money or in good bonds and mortgages, as my estate may be invested in at the time of my decease, to the convention of the Protestant Episcopal Church of the Diocese of the state of New Jersey, or to proper persons to be appointed by said convention competent in law to receive and hold said bequest, nevertheless specially in trust for ever, to hold the said securities, or to invest, and from time to time to re-invest as may become necessary, the said bequest in good and safe security to produce a yearly income (the capital or principal sum always being kept whole) for the maintenance and support of a missionary to be employed in the state of New-Jersey under the direction and sanction of said convention—the above bequest is left with the expectation that it will be applied to the support of a travelling rather to a stationed missionary, still, the convention are at liberty to use it for the latter, if at any time they may think the cause of Christ will most prosper thereby. Item, I give and bequeath to James Swords, or his successor, as treasurer, in trust, the sum of six thousand dollars, to be paid over to him in good bonds or mortgages, for the use and purpose of the Domestic Missionary Society of the Protestant Episcopal Church of the United States of America, nevertheless, in trust to hold the said securities, or to invest, and from time to time to

re-invest, as may become necessary, the said bequest in good and safe security (the capital or principal sum being always kept whole) to produce a yearly income to be applied to domestic missions in the states now under the Episcopal supervision of bishops Kemper and Polk. Item, I give and bequeath to my cousin, Elizabeth Bates, the sum of fifteen hundred dollars. I give and bequeath to my cousin, Robert White, the sum of one thousand dollars. Item, I give and bequeath to my cousin, John White, the sum of five hundred dollars. Item, I give and bequeath to my loved friend and pastor, G. E. Hare, the sum of fifteen hundred dollars. Item, I give and bequeath to my cousin, Rachel Elton, the sum of thirteen hundred, with the understanding that she is to pay to her sister Catharine, yearly, the legal interest of three hundred dollars during the lifetime of the said Catharine. I give and bequeath to Catharine Olden, the sum of two hundred dollars. Item, I give and bequeath to my friend, Rebecca A. Paxson, the sum of five hundred dollars. Item, I give and bequeath to Stacy A. Paxson, senior, the sum of five hundred dollars, in trust, for the use and benefit of his son, Stacy A. Item, I give and bequeath to Eliza, widow of the late Rev. A. B. Jerome, the sum of five hundred dollars. Item, I give and bequeath to Hetty Hollingshead, my faithful nurse, the sum of one hundred dollars, and to her daughter Hetty I bequeath the same sum. Item, I give and bequeath to Abby, wife of Garret Hulfish, the sum of one hundred dollars. Item, I give and bequeath to Mahala Voorhees, widow of the late James Voorhees, the sum of one hundred dollars. Item, I give and bequeath to Benjamin Swain, of Bristol, Pa. (at whose house my dear brother John was so carefully nursed, when he so narrowly escaped drowning in the river Delaware) the sum of one hundred, as a remembrance of his kindness. Item, I give and bequeath to the corporation of Trinity Church, Princeton, the sum of five hundred dollars, in trust, for the use and purpose of assisting to build a parsonage for said church, on condition only that the said parsonage is commenced within one year after my decease; if such should

not be the case, then I leave the last mentioned sum thus: two hundred dollars to the General Missionary Society of the Protestant Episcopal Church, for the purchase and distribution of Sunday school books, prayer books, &c., and three hundred dollars to the Theological Seminary of the Protestant Episcopal Church of the city of New-York. Item, I give and bequeath to the corporation of Trinity Church, Princeton, the sum of four hundred dollars in trust, for the use and support of her parish school, the interest only to be applied, unless the principal is specially needed. Item, I give and bequeath to the corporation of Trinity Church, Princeton, the sum of one hundred dollars in trust, for the use and support of her Sunday school, the interest to be applied yearly for the purchase of books, &c. Item, I give and bequeath to my dear aunt, Ann P. White, all the household and kitchen furniture and books I may possess at the time of my decease, except that may be hereafter named. I give to her also my two-seated dearborne carriage and harness and whatever horse she may choose. My bank stock I wish to make a part of my dear aunt's legacy, as they will give her less trouble in collecting. Item, I give and bequeath my one-seat carriage, harness, with my horse Malcolm, to my beloved pastor, the Rev. George E. Hare. Item, I give and bequeath to my cousin, Mary W. Spackman, the secretary and bookcase left me by my uncle Samuel, with the books contained in it that belong to me. Item, I give and bequeath to my cousin, P. A. Olden, the telescope and Edinburgh Encyclopedia left me by the same uncle. Item, After all my just debts are paid and the expense of fulfilling this my last will and testament, I give and bequeath all the remainder of my property, both real and personal, of whatsoever kind and description, to be equally divided among my four cousins, Job, Robert, George and John White. Item, I wish that the house that I have lately purchased of C. M. Campbell, valued at four thousand dollars, to be part of my dear aunt's legacy, and that in the division of her portion my Trenton Bank be calculated at forty dollars per share and the Easton Bank at thirty dollars per share. Lastly,

[White et al. v. The Ex'rs of Olden et al.]

I do hereby nominate, constitute and appoint my cousin, William White, and friends, Charles S. Olden and Stacy A. Paxson, executors of this my last will and testament, hereby revoking all other and former wills by me had, made or executed, and declaring this present writing to be my last will and testament; in witness of which I have hereunto set my hand and seal, this eighth day of February, in the year of our Lord eighteen hundred and forty-one."

That the said testator afterwards, and on or about the twenty-eighth day of May, in the year of our Lord eighteen hundred and forty-one, made and published a codicil in writing to his said will, and which was also executed and attested as by law is required for passing real estates, which said codicil was in the words and figures or to the purport and effect following:

"I, Samuel S. Olden, do make this present codicil, which I order and direct shall be taken as and for part of my last will and testament, bearing date the eighth day of February, eighteen hundred and forty-one. I give, devise and bequeath to my aunt, Ann P. White, her heirs and assigns for ever, all that lot of woodland, situate and laying in the township of West Windsor, and bounded on the north and east sides by the lands late of James Olden, deceased, on the west by lands belonging to Joseph Clarke, and on the south by a meadow late the property of James Olden, deceased, containing fifteen acres, more or less, and also all the meat and other provisions, and the vessels containing the same, that may be in the house where I now reside; also two pigs in the pen, also one cow of her choice, also all the plate in my house, be the same more or less. I give and bequeath to my friend Mary P. Willits, wife of John F. Willits, two hundred dollars, as a token of my regard, to be paid in six months after my decease. I order and direct my executors to pay, in six months after my decease, the sum of fifty dollars to Hansen Vanest, to be held by him for the benefit of his present youngest son, Olden Vanest. I give and bequeath to Charles S. Olden the sum of seventy-five dollars, to be paid in six months after my decease, and to be applied by

him towards the erection of a church or school-house in the neighborhood of Wrightstown, Pennsylvania. In testimony whereof, I, Samuel S. Olden, have hereunto subscribed my name and affixed my seal, this twenty-eighth day of May, eighteen hundred and forty-one:" as by the said last will and testament and codicil thereto, now in the possession of the complainants, and to which they pray leave to refer, will more fully appear.

That the said Samuel S. Olden departed this life on or about the fifth day of June, in the year of our Lord eighteen hundred and forty-one, without having altered or revoked the said will, other than by the said codicil, and without having altered or revoked the said codicil. That the said William White, Charles S. Olden, and Stacy A. Paxson, the executors in the said will named, soon after the death of the said testator, and on or about the twenty-second day of June, in the year of our Lord eighteen hundred and forty-one, duly proved the said will and codicil before William P. Sherman, esquire, the surrogate of the said county of Mercer, and took upon themselves the burthen and execution thereof.

That since the death of the said testator, Hetty Hollingshead, the younger, one of the legatees named in the said will, has intermarried with and is now the wife of the complainant, William R. Skillman, and by virtue of such intermarriage, the said William R. Skillman, in right of his said wife, became entitled to demand and receive the aforesaid bequest of one hundred dollars. And that the complainant, I. D. Wolf, is the successor of James Swords, another of the legatees named in the said will, as treasurer of the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America, and as such successor is entitled to demand and receive the aforesaid bequest of six thousand dollars, in trust, for the uses and purposes in the said will expressed.

That shortly after the death of the said Samuel S. Olden, the said William White, Charles S. Olden, and Stacy A. Paxson, in virtue of their said character as executors, took posses-

[White et al. v. The Ex'rs of Olden et al.]

sion of all the personal estate and effects of the said Samuel S. Olden, deceased, amounting to the sum of thirty thousand dollars, or some other large sum of money.

That in addition to the house and lot mentioned in said will, and directed to be made a part of the complainant, Ann P. White's, legacy, and the lot of woodland of fifteen acres mentioned in the said codicil, the said Samuel S. Olden, at the time of his making and executing his said will, and at the time of his death, was seized of, or entitled to, a very considerable real estate, consisting of two large and valuable farms, situated in the neighborhood of Princeton, and in the said county of Mercer, and that the said Job White, Robert White, George White and John White, to whom the remainder of the testator's property was given, after the payment of all his just debts and the expenses of fulfilling his said last will and testament, upon, or soon after the death of the said Samuel S. Olden, entered upon and took possession of all the said real estate and premises, and that they have received and still do receive all the rents and profits thereof.

That the said William White, Charles S. Olden, and Stacy A. Paxson, executors as aforesaid, having possessed themselves of the said testator's personal estate and effects as aforesaid, the complainants have made repeated applications to them and requested them to pay and satisfy the said several and respective legacies of the complainants, by and out of the said testator's personal estate and effects, if the same were sufficient for that purpose ; and the complainants have also applied to the said Job White, Robert White, George White and John White, and requested them, that if the said testator's personal estate and effects were not sufficient for the payment of the said legacies, they would consent that the deficiencies thereof might be raised by a sale of a competent part of the said testator's real estate, (the said legacies being as the complainants are advised, and so expressly charge, a charge upon the real as well as the personal estate of the said testator,) or that if the testator's personal estate and effects were not sufficient for the payment of

30

the said legacies by reason of the application thereof, or any part thereof, to the payment of the debts of the said testator, and the expenses incident to the settlement of his estate, that, in that case, the testator's real and personal estate might be marshalled and his personal estate and effects applied in payment of the said legacies, and the said debts and expenses paid out of his real estate, and which the complainants are advised and expressly charge ought to be done, &c.

The bill further states, that the complainants are advised and humbly insist, that if, after payment of the said debts and expenses, the personal estate and effects of the said testator are not sufficient for the payment of the said legacies, that the complainants are entitled to have their respective legacies paid out of the real estate whereof the testator died seized as aforesaid; or that if the personal estate and effects of the said testator have been exhausted by the said executors in the payment of the said debts and expenses, that the complainants ought, and are entitled in a court of equity, to have the said testator's assets marshalled, and to have satisfaction for their respective legacies out of the said testator's real estate, to such amount, and for so much as shall have been applied to the payment of the said debts and expenses, out of the said testator's personal estate, and that such real estate or a competent part thereof ought to be sold for that purpose, and the said testator's personal assets ought to be applied solely to the payment and discharge of the said legacies so as aforesaid due to the complainants and to the said defendants.

The prayer of the bill is, that an account may be decreed to be taken out of the moneys due to the complainants, and such of the said defendants as are legatees under the will of the said testator, in respect of the said several legacies, and of the debts owing by the said testator at the time of his death, and of his funeral expenses, and the expenses attending the settlement of his said estate; and that an account may also be taken of the said testator's personal estate and effects possessed or received by the said defendants, William White, Charles S. Olden and

[White et al. v. The Ex'rs of Olden et al.]

Stacy A. Paxson, executors as aforesaid, or by any other person or persons by their order or for their use; and also an account of the rents and profits of the said testator's real estate possessed or received by, or by the order or for the use of the said defendants, Job White, Robert White, George White and John White; and that the complainants may be paid the full amount of their said several and respective legacies out of the said testator's personal estate, if the same shall be sufficient for that purpose, after payment of the debts of said testator and the expenses attending the settlement of said estate; but if the same shall be insufficient for that purpose, then that the real estate of the said testator, or a competent part thereof, may be sold, and all proper parties directed to join in such sale, and that the money to arise from such sale and the rents and profits of the said real estate so received by the said defendants, Job White, Robert White, George White and John White, may be applied in aid of the personal estate, in payment of so much of the said legacies as such estate shall be found insufficient to pay; or that the debts of the said testator and the expenses attending the settlement of his said estate, may be paid out of his real assets, and the legacies paid out of his personal assets; and that proper directions may be given in that behalf; and if any of the said testator's personal estate shall appear to have been applied in payment of the said debts and expenses, that then the complainants may be declared to be entitled to a satisfaction for their said legacies out of his real estate, to such amount as shall have been applied to the payment of the said debts and expenses out of the testator's personal estate, and that sufficient parts of the said real estate may be sold for raising the same, and that all proper parties may be decreed to join in such sale; and that by and out of the moneys to arise therefrom, the complainants may be respectively paid and satisfied their said several legacies and their costs of this suit; and that all the title-deeds and writings relating to the said estate, may be produced, and all proper and necessary directions given to obtain the several purposes aforesaid, and the payment of the complainants' said

legacies: and that the complainants may have such further and other relief in the premises as shall be agreeable to equity and good conscience.

On the thirtieth of June, eighteen hundred and forty-two, the defendants, Job White, Robert White, George White and John White, the residuary devisees in the said will, filed a demurrer, and thereby demurred to so much and such parts of the respondents' bill of complaint as charge that the legacies therein mentioned, bequeathed in and by the last will and testament of the said Samuel S. Olden, deceased, are chargeable upon the real estate of the said testator, if the personal estate of the said testator should prove insufficient for the payment of the said legacies: and also to so much and such parts of the said bill as charge that in case the legacies are not a charge upon the real estate, then that the debts of the said testator are by the provisions of the said will to be paid out of his real estate.

On the first of February, eighteen hundred and forty-three, the respondents filed a bill of revivor and supplement, whereby Thomas N. Stanford, of the city and county of New-York, treasurer of the Domestic and Foreign Missionary Societies of the Protestant Episcopal Church in the United States of America, was made one of the complainants, (in the stead of the former treasurer of said society,) and Benjamin C. White, Elizabeth T. White and Martha Ann White, the only children and heirs at law of Job White, deceased, being infants, were made defendants, the said Job White having departed this life after the filing of the original bill.

Hearing upon demurrer, at April term, eighteen hundred and forty-three.

*H. W. Green* and *Vroom*, for the defendants, in support of the demurrer.

*Field* and *Dayton*, contra.

[White et al. v. The Ex'rs of Olden et al.]

Cases cited by defendants' counsel.

1. As to the construction of the will. The legacies are not charged on the land: *Walker* v. *Jackson,* 2 *Atkyns,* 624 ; *Haslewood* v. *Pope,* 3 *P. W.* 322 ; *Livingston* v. *Livingston,* 3 *John. Chan.* 158 ; *Harris* v. *Fly,* 7 *Paige,* 425 ; *Davis* v. *Gardner,* 2 *P. W.* 187 ; *Kightley* v. *Kightley,* 2 *Vesey,* 330 ; *Keeling* v. *Brown,* 5 *Vesey,* 359 ; *Parker* v. *Fearnley,* 2 *Sim. and Stu.* 592 ; *Lupton* v. *Lupton,* 2 *John. Chan.* 614 ; *Gridley* v. *Andrews,* 8 *Conn. Rep.* 1 ; 1 *Roper on Leg.* 454 ; *Driver* v. *Ferrand,* 1 *Russ. and M.* 681 ; *Hoye* v. *Brewer,* 3 *Gill. and J.* 153 ; *Wyse* v. *Smith,* 4 *Ibid,* 295 ; *Swift* v. *Edson,* 5 *Conn. R.* 531.

2. That the assets should not be marshalled : *Forrester* v. *Leigh, Ambler,* 172 ; *Hamly* v. *Fisher, Dickens,* 104 ; 1 *P. W.* 680 ; *Powell on Dev.* 655.

Cases cited by complainants' counsel.

1. As to the construction of the will : 1 *Roper on Leg.* 448 ; *Tomkins* v. *Tomkins, Pre. Chan.* 397 ; *Trott* v. *Vernon, Ibid,* 430 ; 2 *Vern.* 708 ; *Awbrey* v. *Middleton,* 4 *Vin. Ab.* 460, *Pl.* 15 ; 2 *Eq. Cas. Ab.* 497 ; *Bench* v. *Biles,* 4 *Mad.* 187 ; *Alcock* v. *Sparhawk,* 2 *Vern.* 228 ; *Minor* v. *Wicksteed,* 3 *Bro. Chan.* 627 ; *Hassel* v. *Hassel,* 2 *Dickens,* 527 ; *Austin* v. *Halsey,* 6 *Vesey,* 475 ; *Webb* v. *Webb, Barnard,* 86 ; *Lypet* v. *Carter,* 1 *Vesey, sen.* 499 ; *Edgell* v. *Haywood,* 3 *Atkyns,* 352 ; *Nichols* v. *Postlethwaite,* 2 *Dallas,* 131 ; *Tucker* v. *Hassenclever,* 3 *Yeates,* 294 ; *S. C.* 2 *Binney,* 525 ; *Witman* v. *Norton,* 6 *Binney,* 395 ; 2 *Am. Eq. Dig.* 181 ; *Downman* v. *Rust,* 6 *Rand,* 587 ; *Ronalds* v. *Feltham,* 1 *Turn. and R.* 418 ; *Jeremy's Eq.* 102 ; 2 *Fonb. Eq.* 463 ; 2 *Hilliard's Ab.* 539 ; 2 *Kent's Com.* 282, 3 ; *Ram. on Assets,* 58 ; *Cole* v. *Turner,* 4 *Russ.* 376 ; *Brudenell* v. *Boughton,* 2 *Atkyns,* 268.

2. As to marshalling the assets : 8 *Vesey,* 376 ; *Jeremy's Eq.* 539 ; *Ambler,* 128 ; 1 *Dickens,* 105 ; 2 *Fonb,* 515 ; 3 *Bro. Chan. C.* 347 ; 1 *P. W.* 403 ; 3 *Vesey,* 379.

30*

THE CHANCELLOR.   Samuel S. Olden, a highly respectable gentleman, residing near Princeton, died in June, eighteen hundred and forty-one, seized and possessed of a large real and personal estate; he left a will which bears date on the eighth of February, eighteen hundred and forty-one, and a codicil bearing date the twenty-eighth of May, eighteen hundred and forty-one, both of which are executed agreeable to the laws of this state.   The will and codicil were both made but a short time before his death.   A question has arisen upon the construction of the will, and the parties have instituted this suit for the purpose of obtaining a judicial determination upon it.   It is evidently the desire of all, not to litigate, but to obtain a decision of this court, upon the merits of the cause, in the easiest and most direct course practicable.

The bill sets out the making of the will by the testator, and its probate in due form of law.   The will itself is also set forth in words at length; by it there are several specific legacies given, amounting in the whole to thirty-three thousand dollars. These legacies vary in amount from one hundred dollars to ten thousand dollars.   The first clause is a bequest of ten thousand dollars to Ann P. White, whom the testator affectionately terms his dear aunt, and of whom he adds, "since she has had the charge of us, has acted the part of a kind and devoted mother." The next item, is a bequest of eight thousand dollars to his executors in trust, to be paid over to the convention of the Protestant Episcopal Church of the diocess of New-Jersey, for the support of a missionary in said state.   The third item, is a bequest of six thousand dollars to the treasurer of the Domestic Missionary Society of the Protestant Episcopal Church of the United States, to be applied to the cause of domestic missions in the states therein designated.   Another item, is a bequest of fifteen hundred dollars to the rector of the church at Princeton, whom he denominates as his "loved friend and pastor, G. E. Hare."   Another item, is a bequest of one hundred dollars to Hetty Hollingshead, whom he denominates "his faithful nurse," and another of one hundred dollars to Benjamin Swain, of

Bristol, Pennsylvania, who is referred to as the person "at whose house his dear brother John was so carefully nursed, when he so narrowly escaped drowning in the Delaware." Another item, is a bequest of five hundred dollars to the corporation of Trinity Church, at Princeton, towards the erection of a parsonage; of four hundred dollars for the support of a parish school, and one hundred dollars for the purchase of books for the Sunday school. The remainder consists of legacies in different amounts to his relatives and friends, most of whom he designates as his cousins. Of the thirty-three thousand dollars, it therefore appears, that fifteen thousand dollars is given to religious objects and charities, and the balance in personal legacies to his friends and relatives. After thus far disposing of his property, and giving in addition a few specific articles to his friends, he makes the following clause, upon which the difficulty in construing the will has arisen.

The clause is in these words: "Item, After all my just debts are paid, and the expense of fulfilling this my last will and testament, I give and bequeath all the remainder of my property, both real and personal, of whatsoever kind and description, to be equally divided among my four cousins, Job, Robert, George and John White."

The object of this suit is to obtain an account of the estate, and payment of the legacies, from the personal estate if sufficient, and if not then from the land, and if not, then that the debts and expenses of settling the estate should be paid out of the real estate.

There is a demurrer to the bill, upon which two questions are raised. First, are the legacies in this will chargeable on the real estate? and, secondly, if not, are the debts chargeable on the real estate, and will a court of equity direct, under the provisions in this will, that they be paid out of the real estate? These questions are of sober import, and will, probably, have an important bearing on the disposition of the testator's estate.

I proceed to consider the first question raised by the demurrer;

Are the legacies a charge, by the terms of this will, upon the real estate ? or, in other words, if the personal estate shall be insufficient, after payment of debts, to discharge the legacies, must they be lost to the legatees, or can they resort to the land devised in the residuary clause for their payment ?

The general principle is undeniable, that the personal estate alone is liable for the payment of legacies, unless the land be charged with their payment by direct terms, or by fair and just implication. In this case there can be no pretence of a direct charge on the land ; but it is insisted that such was the intention of the testator, from the terms used in the residuary clause, as well as from the whole scope and tenor of the will. The will was drawn, it is evident, by an intelligent person, acquainted with the use of words in their ordinary acceptation, and probably (as stated on the argument) by the testator himself. It is equally apparent, that the writer was unacquainted with technical legal phrases, and most probably, therefore, with many legal principles applicable to the subject of wills. The language in the residuary clause is not, after the payment of legacies, but after the payment of "my just debts and the expense of fulfilling this my last will and testament, I give," &c. This last clause, "the expense of fulfilling this my last will," it is contended, refers to legacies ; but this view appears to me rather more ingenious than sound. It would be going very far, had the testator said, after payment of my just debts and fulfilling this my will, to have so considered it ; but the term expense of fulfilling this my will, evidently refers only to the charges of the executors, and the contingent expenses incident to the execution of the will.

The plain and only reasonable view to be taken is, that the testator, after making the specific legacies, which had, no doubt, occupied his main thoughts in the disposition of his estate, recollected that his debts were to be paid, and the charges for the execution of the will, and after that the residue was to be disposed of. Having, therefore, finished the various legacies, he adds, most naturally, after my debts and the expense of fulfil-

ling the will are paid, I give all that remains to my four cousins.

There is no devise of a specific farm to A., and another to B.; but it is a general devise of all the remainder of his property, both real and personal. There is a blending of the real and personal estate together, treating it as an entire thing, and making no distinction whatever in it. He clearly meant to give what remained, after the previous dispositions of the will had been satisfied. It is fairly to be inferred, that this testator either did not know, or the thought did not at the time occur to him, that the personal estate was alone applicable to the payment of legacies. The language used in the clause is, that the remainder, not of his land, not of his personal estate, but of his property generally, both real and personal, of whatsoever kind and description, should go to the residuary legatees and devisees. Probably a large majority of persons, and those of intelligence, have no other idea, than that their whole estate, as well land as personal property, must be disposed of in the discharge of the legacies bequeathed by their will. It would, indeed, be difficult to satisfy the language used in this instrument upon any other idea. It is the remainder only that is given of his real and personal estate, and yet this is the first disposition that he makes of any of his real estate. If the design was that his four cousins should take his lands, freed from any obligation except for the payment of his debts and the expenses of his executors, it would seem to me that the testator would have made a plain devise of them at once, and not in the form of a residuary clause. Besides, it is not a common course to fasten debts upon real estate; these, all know, are to be paid, and under our law cannot be passed by so long as property of any kind remains. The idea that the testator meant to blend his estate, and treat his personal and real estate as one common fund or property, is fortified by the clause in the will which immediately follows. "Item, I wish that the house I have lately purchased of C. M. Campbell, valued at four thousand dollars, to be a part of my dear aunt's legacy." This was a distinct direction, that certain

of his real estate, at a specified valuation, should be applied in payment of one of the previous legacies in the will, and that, too, immediately after he had made the residuary clause.

I state this, as the impression made on my mind, as to the intention of the testator, and that is to govern. We are not to make a new will, or to enter at all into the question, whether the disposition he has made of the property, be judicious or not, but if possible, to place such a construction upon it as to carry out his own views and object. Every man has a right to bestow his property when and how he pleases, and his meaning, is the grand point to be reached.

Thus far, it will be observed, I have been considering the will independent of adjudged cases. These have been furnished me by the industry of counsel on the argument, and it behoves us to look into them, and see what the light, experience and judgment of others have shed upon like cases.

The English authorities will be found collected in 1 *Roper on Legacies*, 448; they were cited and carefully examined at the hearing; they are far from being uniform, and depend much upon the language used in each will. In all, the intention is held to be the governing rule; in some, it is said, the charge shall be declared in favor of creditors and not legatees, while in others no such distinction is admitted. In most, a construction has been adopted favorable to the heir at law, while the simple fact of a devise in the form of a residuary clause, unaccompanied by any other circumstances, has not been sufficient to raise the charge; when the charge has been admitted also, it has been held that the personal estate must be resorted to in the first instance, and the land only looked to in aid of that fund. In *Lypet* v. *Carter*, 1 *Vesey, sen.* 500, the master of the rolls held the legacy a charge in favor of a daughter, whose portion would be lost without such construction. There the real estate was devised to a son, and no direct charge made upon it, but it was inferred from the whole will that such must have been the testator's intention. In *Alcock* v. *Sparhawk*, 2 *Vernon*, 228, the testator first devises his lands to his brother, in

fee ; he then gives a legacy of two hundred pounds to Susanna Alcock, to be paid by his executor within five years after his decease ; he then appoints his brother executor to his will, desiring him to see the same performed according to the trust and confidence that he reposed in him. There was no specific charge, and yet upon the clause creating his brother executor, it was adjudged that the lands were liable to the payment of the legacy. The case of *Heath* v. *Heath*, 2 *Peere Williams*, 366, was the case of a direction given, that the legacies should be paid out of the real estate, and a gift of the personal estate to the testator's children ; there, as the personal estate was disposed of, the whole of the legacies were paid out of the real estate. In the case of *Walker* v. *Jackson*, 2 *Atkyns*, 624, lord Hardwicke declared the general rule to be, that the personal estate must be applied in the first place in payment of debts, but that a testator may substitute the real in the room of the personal estate ; and he held such to be the intention in that case, and the personal estate was exempt accordingly, and the debts charged upon another fund. In *Davis* v. *Gardiner*, 2 *Peere Williams*, 187, there were words independent of the clause devising the lands, showing an intention that the personal estate alone should pay the legacies, and it was so ordered ; this construction also was in favor of the heir. The case of *Kightly* v. *Kightly*, 2 *Vesey*, *jr.* 328, proceeds wholly upon the ground that there is nothing on the face of the will, to show the testator's desire to charge the lands devised with the payment of legacies, and the master of the rolls forms his opinion from the general tenor of the instrument ; the words relied on to make out such intent, are those used in the first clause of the will, in which the testator directs all his legal debts, legacies and funeral expenses to be paid ; but the will then makes a number of specific devises, before the residuary clause, and it was adjudged that the complexion of the will evinced no intention that any other than the personal estate should be applied in discharge of debts and legacies. *Keeling* v. *Brown*, 5 *Vesey*, 359, is very similar to the last case cited. The reliance to show an intention to charge

the lands, was on the first clause, in which the language is, "Imprimis, I will and direct, that all my just debts and funeral expenses be paid and discharged, as soon as conveniently may be after my decease, by my executors." Then follows a number of specific devises, with the ordinary residuary clause. It was held that the first clause was only a direction to the executors to discharge the debts and funeral expenses, without intending to change the fund out of which they were to be paid. In *Brudenell* v. *Boughten*, 2 *Atkyns*, 268, there were two wills. By the first, two specific pecuniary legacies were given, and then follows a devise of the remainder of the freehold and personal estate after payment of the debts and legacies. The last will revoked the former and reduced the legacies in amount, and by a residuary clause devised all the rest of the estate, real and personal, to the brother of testator, and appointed him executor. The first will was held by lord Hardwicke to be cancelled by the second, and that the legacies given by the second will were a charge on the real estate. The case of *Bench* v. *Biles*, 4 *Mad.* 187, referred to in *Powell on Devises*, 661, is still stronger. The testator gave all his personal and real estate to his wife, for life, and after her death he gave several legacies, and then all the rest, residue and remainder of his real and personal estate to his nephews; the legacies were charged on the real estate, and upon the ground that there was a blending of estates as one fund.

These are a few only of the English cases, cited on the argument, or which might be found bearing more or less on the question.

In this country the cases are also far from being uniform. In Pennsylvania, the residuary clause has been held of itself sufficient to indicate an intention that nothing should pass by it, but what remained, after all previous dispositions in the will were provided for. In Connecticut, their courts have not inclined to raise a charge except in the clearest cases: *Nichols* v. *Postlethwaite*, 2 *Dallas*, 131; *Hassenclever* v. *Tucker*, 2 *Binney*, 525; *Swift* v. *Edson*, 5 *Connecticut*, 531; *Gridley* v. *Andrews*, 8

*Connecticut*, 1. In New-York, chancellor Kent, in *Lupton* v. *Lupton*, 2 *John. Chan.* 614, has reviewed some of the English cases, and placing himself upon the case before referred to, of *Keeling* v. *Brown*, held that the mere residuary clause, without further indications on the face of the instrument, will not authorize a charge upon lands. In ordinary cases he considers the clause as the *formula* in the wills. This is, perhaps, the safest rule of construction, but it is by no means intended by that learned chancellor, that such a clause, coupled with other evidences of intention appearing on the will itself, may not be used in aid of such a construction.

I confess this examination of cases, while it exhibits the general rules of construction, has done little towards deciding the present cause. Indeed, it must be so in the nature of things. One will forms but a poor guide for another, and the introduction of one sentence, nay, of one word, will sometimes change the whole face of the instrument. Every will carries its own impress.

After a full consideration of the will before me in all its parts, and referring with some care to the authorities cited on the argument, many of which I have deemed it unnecessary to state here, I have come to the decided conclusion that the testator designed to charge the lands devised in the residuary clause, with the payment of the debts and legacies, not as a primary fund, but in aid of the personal estate, if that should be exhausted. I think so, in the first place, from the general character of the whole instrument, by which it would appear, that the testator either knew no difference, or it did not occur to him at the time, between real and personal estate in the payment of legacies. In the second place, from the peculiar expressions used in the residuary clause, by which the remainder of his property alone, was to go to the devisees. In the third place, because the testator, at the time of making the residuary clause, which embraces his real estate, had not parted with one acre of it. In the fourth place, from the clause directing that a house should, at a certain valuation, be a part of one of the legacies,

31

furnishing evidence that the testator made no distinction in his own mind, in the application of his property to the purposes of the will, whether real or personal.   And in the last place, from the character of the legacies themselves.

These legacies strike me as of no ordinary character.   The testator had no immediate family, never having married, and was therefore at liberty to look round for those objects of affection and charity, which had been dear to him in life.   To his aunt, Ann P. White, he seems to have felt the strongest attachment.   She is first named in the will.   He speaks of her as his dear aunt, and one who had the charge of him, and as I infer, of his branch of the family, and had acted the part of a kind and devoted mother.   He is so careful of her as to provide her a house to live in, furniture to supply it, and a horse and chaise to ride in.   With such manifestations of feeling, it would require a strong case to induce the belief that he did not intend this legacy should be paid, and that too at all hazards.

The testator was also a man of correct feeling; he remembers his faithful nurse, his relatives, and even the man who had befriended a brother in distress.   He was also a man of strong religious feeling, and much interested in the cause.   He gave legacies to advance the spread of the Gospel, not only at home, but in other states.   He looked with evident pleasure upon his own church at Princeton, and while he remembered the place of his worship, was not unmindful of him who ministered at the altar.

These legacies were, from the language used, near the testator's heart.   They were not made incidentally, and aside from the main disposition of his property, but were evidently the principal and grand objects he had in view.   The devisees in the residuary clause, though doubtless persons for whom the testator must have had the highest respect and affection, yet they are stated to be his cousins, and in that respect were no nearer to him than most of the legatees, and in fact two of them are among the number of those who receive legacies.

The construction, therefore, which I place on this will, and

[White et al. v. The Ex'rs of Olden et al.]

I can bring my mind to no other, is, that the debts and expenses of executing the will are to be paid first from the personal estate, then the legacies, and in case of a deficiency, the land devised in the residuary clause may be resorted to.

This view renders it unnecessary to consider the second proposition stated in the argument.

Demurrer overruled, with costs.*

* From this decision, the residuary devisees appealed. The appeal was argued before the court of errors and appeals, upon both grounds of demurrer, at April term, eighteen hundred and forty-six, and the order of the chancellor reversed.

The following decree was made in that court:—

"This cause coming on to be heard, upon an appeal from the decree of the chancellor, made the eleventh day of July, one thousand eight hundred and forty-three, overruling the demurrer filed in this case on the part of the appellants, to so much and such parts of the respondents' bill of complaint as charge that the legacies therein mentioned as bequeathed in and by the last will and testament of the said Samuel S. Olden, deceased, are chargeable upon the real estate of the said testator, if the personal estate of the said testator should prove insufficient for the payment of the said legacies; and also to so much and such parts of the said bill, as charge that in case the said legacies are not a charge upon the real estate, then that the debts of the said testator are, by the provisions of the said will, charged upon the said real estate. And the matter having been debated before the court, by William Halsted and Peter D. Vroom, of counsel with the appellants, and by Richard S. Field and William L. Dayton, of counsel with the respondents; and the court being of opinion that the legacies mentioned and bequeathed in the said will of the said testator, are not, nor are any of them, chargeable upon the real estate devised by the said testator, in and by his said will, in case the personal estate of the said testator should prove insufficient for the payment of the same; and also that the debts of the said testator are not, by the provisions of the said will, charged upon the said real estate, so as to entitle the said legatees to have the assets marshalled for the payment of the legacies, as in their said bill it is prayed, and that the said demurrer ought to have been allowed: It is, on this thirtieth day of April, in the term of April, in the year of our Lord one thousand eight hundred and forty-six, ordered, adjudged and decreed, that the said decree of the chancellor, overruling the said demurrer, be reversed, with costs, and that the said demurrer be allowed; and it is further ordered, that the record and proceedings in this cause be remitted to the court of chancery, to the end that the said court may proceed thereon according to the rules and practice of the said court."